Next matter, number 181377, Erika Luceus v. State of Rhode Island et al. May it please the court, I'm Tasby Harrison, I represent the plaintiff, Erika Luceus v. State of Rhode Island. What inference is the jury supposed to draw from the affidavit of Edward Salibert, a 12-year top administrator employed by the defendant? What are they to make of his affidavit stating that he had the authority to make acting appointments but consciously declined to do so because they were unnecessary and unfair? What the jury will be entitled to infer from this evidence is that the employer's prolific use of acting appointments was motivated by a desire to do an end run around merit-based promotions and create their own new normal where acting appointments gave recipients a competitive advantage. What the plaintiff is complaining about? But there's only a problem with that if it has an impact on race. Yes. So the complaint about employment practice is the prolific use of acting appointments and the causation is the one statistic that the employer and its statistician cannot distort. That statistic is for a five and a half year period the only recipients of acting appointments were white. This is what Erika Luceus is complaining about. But isn't, I have not read the statistician's report, but I thought the statistician's report that was filed on behalf of the defense was that given the numbers involved that simply was not statistically significant. And that goes to a requirement that this court has imposed that there be statistical significance evidence. So at least on the first prong on the impact prong, isn't that the end of the case? Well it wasn't the end of the case in the shipyard case in which the court said that the fact that the employer hadn't hired a single minority in six years was clear enough evidence to entitle the jury to infer race discrimination without any testimony on behalf of the plaintiff by an expert. That is what we have in this case. A five and a half year period of time that presents a clear statistic that says there's something wrong with this picture. Now Erika Luceus complained that I'm being passed over. Her administrator that she reported to, Rose Lemoine, testified in her deposition that acting appointments, yes, I agree with the plaintiff. They do give a competitive advantage to the recipient. Now Monique Perkins signed an affidavit stating I'm black, I work here, acting appointments is denying me an equal opportunity to compete. Margarita Antuna signed an affidavit saying essentially the same thing. They both resigned their employment because acting appointments were giving all the competitive advantages for a five and a half year period to the white employees. That is impact. And the statistic is, that's the only statistic that really matters is, only white employees received it for the relevant period of time. And that relevant period of time is up until plaintiff and six of her co-workers, seven of her co-workers filed formal written complaints to their HR department and plaintiff's complaint also alleged that she had previously complained to her union. Now the three minorities appointed after plaintiff complaint, they cannot be factored into the statistical analysis because that was a corrective action. And their affidavit submitted by the plaintiff stating, we believe this was a band-aid, this was an employer's response to our complaints, which essentially acknowledges and is an admission that prior to those complaints and during that five and a half year period when only whites received acting appointments, then the employer said, okay we agree with you, this is having a disparate impact and we'll make a correction. Only problem is their correction didn't apply any relief for the plaintiff. Counsel, during the five and a half period that you're focusing on, were there minorities in management positions within the agency? Edward Salabur had been employed by the agency since 1980 and he had been a top administrator as of 2004. So five years before my client was ever employed, different governors, different directors of the agency, yes, he became a top administrator. The director of the agency was a black female, but she didn't go through the same process as plaintiff, she was appointed by the governor. And we don't know what the process was for Edward Salabur, but it was Edward Salabur and the director. Now, weren't there more than just the individuals you've identified, although the numbers were small, weren't there more minorities in management positions within the agency than just the individuals that you've identified? There was a black male manager, but he was not selected based on an acting appointment. He had to go through the merit-based promotional process, which is another distinction. So when it came time to promote a black manager, he had to go through the merit-based process. The reason I ask the question is, counsel, I think the district court makes the point that even focusing on that five-and-a-half-year pool, that you have not presented evidence of the eligible pool of applicants, that the assumption seems to be that every minority within the relevant universe was eligible for a promotion of some kind. And the district court seems to be raising a question about that assumption that everyone was eligible for an appointment. How do you respond to that concern of the district court? Well, the fact of the matter is, there was no set established requirement for promotion. You weren't required to have a college degree to be promoted. You weren't required to have been employed for any specific time to be promoted. Rose Lemoyne, with 26 years and a top administrator, had a high school diploma. Elizabeth McCaughey, who was hired the same day as my client, had a high school diploma. So what you needed to be able to advance up wasn't particularly education, it wasn't tenure. In fact, the criteria is not written down. So Plaintiff maintains that, yes, every member of the union was capable of being promoted into management, entry-level management, and rising up the ranks the same way that Rose Lemoyne did. So your answer is that since there were no criteria at all, the district court's insistence that the plaintiff had to establish eligibility criteria just doesn't reflect the reality of the situation in the department. There were just no criteria. Is that your point? That is my point, Your Honor. Yes, exactly. Now, the plaintiff has identified ten employees that were all white, who were all hired after her except for one, who was hired one month before her. They all passed her over for promotion. She had more education than all of them. And even the defendant admits that in the course of 2009 to 2014, close to 50 acting appointments were made. The fact that so many acting appointments were made, that the normal process was ignored so often, creates an alarming inference for a jury to say, why? What's motivating this? What is the defendant's answer to the question of why acting appointees could serve in the acting capacity for a year or more? The defendant says these are to fill emergencies and for temporary purposes, but the ten people that my client identified on page 2 of her brief, every single one of them went on to receive the permanent position. That's 100% of the time. That means that this new acting appointment process became the process, and the normal process of merit-based became a sham. So this is the employment practice that's being complained of, and it's a shame that I would like to reserve some time for rebuttal. I'll just ask you a question. You can extend your time or give the other side time, too. This is on the district treatment claim. The district court seems to reject that in part because the court says that your client was not in the same position as other individuals who might be considered for promotion, because she had this history of difficulties within the department, and the court accepts the fact that that's true, that she had all of these problems, because the court says there's been no refutation of those allegations about the problems she had, not being a good team player, confrontational, things like that. How do you respond to the district court's observation that those allegations were never properly refuted so that he accepted that characterization of your client's work history? First of all, the plaintiff submits that it was improper for the district court to assume the truth of the defendant's accusation that the plaintiff was... But excuse me, the court doesn't do that. The court says he only accepts them because they were never properly refuted. He doesn't assume it. He says, basically, I had no choice because the assertions had been made and they'd never been properly challenged. Well, the plaintiff made out a prima facie case by acknowledging that she was a member of a protected class, that she was performing her job satisfactorily, and there should have been a presumption at the prima facie stage that she was qualified for promotion. Also we submitted the affidavit of Edward Salabert, who said, I know Erica Lucius. I believe that she is qualified to be a manager. He's in a position... He's one of the ones making decisions who get to be managers. Also, Rose Lemoine testified that she never disciplined Erica Lucius for refusing any work. She said that Erica Lucius always, ultimately, decided to do the work that she was asked. She said that she never spoke to Erica Lucius about any of the employer's complaints. In the case of Cicero v. Borg Warner, held that the employer's failure to contemporaneously document its complaints about the employee creates an issue of fact as to whether the employer's assertions are legitimate or a pretext. This court in Cicero said that although a jury may accept the employer's belated, never before expressed complaints about the employee's work. Consideration of these complaints is not appropriate at the prima facie stage, and I submit they're not appropriate at the third and final stage. They are evidence of pretext. So, my client had a spotless employment personnel file. No one had ever spoken to her. Every time she asked, why am I not being promoted, the answer was, management discretion, not your recalcitrant. The employer took no action to correct these alleged problems with the employee. So, I say that the employer assertion is the employee denied that she was anything but qualified and appropriate and performed her job the same way everyone else did. I don't think that it's appropriate for the district court to assume that the employer was correct and that the employee was not. Thank you. Good morning. May it please the court, Katherine Sadick for the defendants. The district court's decision granting summary judgment should be affirmed for two simple reasons. First, plaintiff failed to produce the data and statistical analysis necessary to prove a disparate impact claim. And second, plaintiff cannot prove disparate treatment because she failed to produce evidence that defendant's reason for not selecting her to be an acting manager was a pretext for racial discrimination. First, turning to disparate impact, it's well established that in order to establish a prima facie case, plaintiff cannot just rely on general statistics about the workplace. She must show that some specific employment practice, here acting assignments, causes employees to be selected to be an acting manager in a significantly different pattern from the eligible pool based on race. As the Supreme Court said in Ritchie, there must be a threshold showing of a significant statistical disparity. And in order for plaintiff to do that, two things are necessary. First, reliable and complete data regarding the individual selected in the eligible pool. And second, expert analysis of that data. Here, plaintiff offered neither. As the district court found, plaintiff failed to produce data identifying the eligible pool. Although there may not have been a set written criteria to be an acting manager, there were statements of undisputed fact articulating the requirements that were necessary and the things that the managers making those appointment decisions looked at. And significantly, plaintiff herself admitted that when she was first starting out in her first year, she would not have been qualified to be a manager. So clearly there are criteria. Is there something in writing about what criteria managers look at? Yes, there is, Your Honor. It's set forth in the statement of undisputed facts that defendants set forth. No, no. I mean, was there something in writing in the workplace? No, there wasn't, Your Honor. And that's in part because the nature of these positions were meant to be an acting position to fill an immediate need while the permanent promotion process could take place to permanently fill the positions. How would an eligible, I mean, how would a person know to conform their work behavior in order to meet whatever eligibility requirement management kept secret? Well, the undisputed fact, Your Honor, is that it really wasn't a secret formula. It was being a good employee. It was being someone who could serve in a managerial function in a pinch when someone was needed to fill in. It was basic criteria like working well with others, doing your job, following company rules, something that really would have been apparent to anyone, that just being a good employee and someone who could fill in. What do you mean apparent to anyone? I don't know what that means. The record suggests that these acting appointments were entirely within the discretion of certain managers. The record suggests that, and in fact the court seems to accept, that there was a lot of evidence of nepotism at work in this workplace and that that was perhaps the only evident criteria. You had to know somebody. You had to be a member of a family to get these jobs. There was an allegation, Your Honor, but there was no evidence to that effect. Just as this is, as I understand it, part of the summary judgment record, the assertion that nepotism was right within this department. The affidavit submitted stated boilerplate expressions of employees' feelings and perceptions. And just as this court has held that a plaintiff cannot survive summary judgment simply by asserting her own conclusory beliefs and perceptions, the same is true regarding the handful of offenses with affidavits in this case. How is that any different from what you're saying was management discretion? You're saying that management had this criteria that was never shared with anyone for selecting. But you're saying that based upon the employees' impressions that people were promoted based upon nepotism, that we can't consider that but we should consider what management discretion whatever that means, mean. I think the key, Your Honor, is that plaintiff herself recognized that there was at least some kind of line about being qualified or not qualified because she admitted that she herself for a period of time when she was in the union would not have been qualified. So whatever exactly that qualification standard is, it's undisputed. So what, that accounts for one year. We're talking about a five and a half year period. I mean, the record seems to indicate that educationally she had far more qualifications than many other individuals that were in the union. Isn't that so? It's unclear, Your Honor, because there really isn't evidence in a lot of the allegations that plaintiff makes. And on that five and a half year period, it's important to note that plaintiff does not identify when that period was, how many three-day rule assignments were during that period, the racial makeup of the eligible pool or statistical analysis about it. And in fact, even though plaintiff repeatedly asserted in her initial brief that there were no minorities selected to be a three-day rule assignment until she complained in September 2014, she admits in the reply brief on page 12 that that's simply not true. And that an African American woman was appointed to an acting assignment before she ever complained in September 2014. And even though most of plaintiff's brief sets September 14th as the date and claims that there was no minority appointed before then, that's factually not true. It was an undisputed fact, and plaintiff's reply brief on page 12 acknowledges it. Additionally, the evidence is that there was a very small number of three-day rule assignments during this time period, and plaintiff failed fundamentally to present any expert analysis to show that this small number of assignments could have had and did have a desperate impact. This court issued a decision in the case Knack v. Great Atlantic & Pacific Tea Company, which was not specifically cited in the brief, but can be found at 871 F. 2nd 179. And in that decision, written by Judge Sellier, the court confronted a situation very similar to this one, and held that the plaintiff's reference to some vague policy of discrimination and the mere citation of unexplained statistics are not sufficient to survive summary judgment, where they should proffer no expert to show the probativeness of the figures, their likely statistical significance, or the inferences which might properly be drawn from them. And the same is true here. Plaintiff fails on both prongs that she needs for disparate impact. The qualifications piece that we talked about, because plaintiff admitted that there's some qualification line, and what that is is really immaterial. The key is that plaintiff just presented statistics about the whole union, and didn't even bother to divide that between qualified and unqualified. But even putting that aside, plaintiff needs to do something with that data. Plaintiff needs to present analysis to show that that data equals a disparate impact based on race. Plaintiff at one point, counsel, claimed there were 50 acting assignments. That's just not true. It was undisputed in the summary judgment record that there were 13 assignments, only 10 of which were to the entry level manager position, which plaintiff conceded was at most the one she would be qualified for. And of those 10, three went to minorities. It's also noteworthy that the background here is the Department of Labor and Training, that as counsel admitted, was led by an African American woman, where there were managers who were minorities, and where it's undisputed that minorities received appointments from the challenge practice. This is a far cry from the idiosyncratic facts of a case like Steamship Clerks, where there was an all-white union and all-white appointments. I see my time is running short, and I want to touch upon the disparate treatment analysis. The facts of plaintiff's track record were undisputed, and she herself testified to them. They were also set forth in statements of undisputed fact, which plaintiff never disputed during the summary judgment process, and pursuant to Local Rule 56A3, all of those facts are deemed admitted. Facts like how plaintiff had a public dispute in the middle of the workplace, how she posted signs criticizing management, and bearing messages like... Counsel, even if I understood your opponent's response to that to be that even if you're right, that she hasn't properly disputed those specific incidents, the fact remains that she has a personnel trial that does not disclose any consequences of that, that, and I guess the point is that her employer did not attach any particular significance to those incidents, and so they do not have the disqualifying for promotion, they do not have the disqualifying impact that you're now asserting that they do. Why doesn't that, not so much that they happen, but why doesn't that put into dispute the significance of those incidents for the plaintiff to create a relevant factual dispute in the summary judgment record? Well, it was an undisputed fact that plaintiff was repeatedly counseled about this behavior, and about many of the different incidents that she testified about. Just because her managers made what frankly was probably a charitable decision to not institute a formal discipline process is not evidence that was pretextual when they thought that she was not suitable to be a manager. In Hawkins, this court made clear that it's insufficient for the plaintiff to argue that she might have been a good prospect for the position. She must specifically show that the reason that the DLT management swore to in affidavits was the reason she was not selected was in fact a pretext, and not just a pretext, but a pretext for racial discrimination based on animus. This court less than a year ago in the Genesis Healthcare case noted that in place of search of animus will not survive summary judgment if she or he relies on mere conclusory allegations, improbable inferences, and unsupported speculation. And that's what we have here. We have very similar to the Garman and the Ray cases, a plaintiff who suspects that she's been discriminated against, but just does not have the evidence to make any kind of showing of animus that could carry a disparate treatment case, especially in light of her undisputed track record of incidents which just on their face are problematic and disruptive to the workplace, and that date back to 2010 and was set forth in undisputed facts. Thank you.